UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN EDWIN WOODWARD,

                                                       Case No. 14-12347

    Plaintiff,

                                                       Hon. Denise Page Hood

v.

RAYMOND D'ONOFRIO,

    Defendant.

_____/

ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND
SETTING DATES

## I.    BACKGROUND

On June 16, 2014, Plaintiff Steven Woodward filed a Complaint against Defendant Hazel Park Police Officer Raymond D'Onofrio alleging one claim of a Violation of Civil Rights Pursuant to 42 U.S.C. § 1983 under the Due Process Clause of the Fourteenth Amendment, including protection to be free from unnecessary force, unreasonable force and excessive force under the Fourth Amendment of the United States Constitution. (Comp., ¶ 28)

On July 22, 2011, Woodward's uncle, William Howard Baker, called 911 claiming that he had been assaulted with a baseball bat by Woodward. Baker told the police that Woodward had fled out into the backyard with the baseball bat. Officers

from the Hazel Park Police Department were dispatched to the scene. Officer Michael Kasdorf observed Woodward fleeing on a bicycle and transmitted the direction via police radio. Kasdorf had ordered Woodward to stop, but Woodward continued on his bicycle and Kasdorf ran after him. Kasdorf observed a patrol car driven by D'Onofrio at which time he radioed D'Onofrio the direction where Woodward was heading to on his bike. D'Onofrio looked for Woodward and saw him on his bicycle southbound on the sidewalk approaching Nine Mile. D'Onofrio yelled commands to Woodward to "stop." D'Onofrio was traveling in the curb lane right next to the sidewalk where Woodward was riding his bicycle. D'Onofrio saw Woodward get up off the saddle of the bicycle and begin pedaling faster. Woodward then moved the bicycle into a paved parking area shared by the Mobil gas station. D'Onofrio claims he intended to follow Woodward and decided to turn into the driveway. D'Onofrio claims he was focused on turning safely and momentarily took his eyes off Woodward. The next memory D'Onofrio claims he had was the sensation of Woodward's bicycle striking his patrol car.

    Woodward admits in his deposition that he had consumed several beers at a bar prior to his confrontation with his uncle. Woodward remembers that his uncle called 911 and, because of his criminal history, Woodward admitted to fleeing the house on his bicycle. Woodward denies he took a bat with him. Woodward claims he does not

remember anyone yelling at him to stop before he was struck. Woodward asserts he ended underneath the vehicle and that D'Onofrio attempted to move the car off of him. Woodward was able to wiggle out from under the car without assistance. Woodward sustained burns, multiple fractures of his right and left ankles, road rash and injury to his cervical spine. Woodward was charged and convicted of domestic assault and fleeing and eluding.

This matter is before the Court on D'Onofrio's Motion for Summary Judgment based on qualified immunity. A response and reply have been filed.

## II. ANALYSIS

### A. Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its

burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

### B. 42 U.S.C. § 1983 / Fourth Amendment Claim

D'Onofrio moves for summary judgment as to Woodward's § 1983 Fourth Amendment claim. Woodward responds that there remain genuine issues of material fact to preclude summary judgment at this time.

Section 1983 permits individual recovery for certain violations of federal law, requiring a plaintiff to allege 1) state action that 2) deprived an individual of federal statutory or constitutional rights. *Flint v. Ky. Dep't of Corr.,* 270 F.3d 340, 351 (6th Cir. 2011). Government officials are entitled to qualified immunity where their

actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Green v. Reeves*, 80 F.3d 1101, 1104 (6th Cir. 1996) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is an initial threshold question the court is required to rule on early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.* The Supreme Court in *Saucier v. Katz* instituted a two-step inquiry to determine qualified immunity which inquiry was to be performed sequentially. In *Pearson v. Callahan,* 555 U.S. 223 (2009), the Supreme Court abandoned the requirement that the inquiry must be performed sequentially. Although courts are free to consider the questions in whatever order is appropriate, the Supreme Court ruled that the two questions announced in *Saucier v. Katz* remain good law and that it is often beneficial to engage in the two-step inquiry. *Pearson,* 555 U.S. at 236.

The first inquiry to determine qualified immunity is, taken in the light most favorable to the party asserting the injury, whether the facts alleged show the official's

conduct violated a constitutional right. *Siegert v. Gilley,* 500 U.S. 226, 232 (1991). "To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati,* 953 F.2d 1036 (6th Cir. 1992). If no constitutional right would have been violated, there is no necessity for further inquiries concerning qualified immunity. *Saucier,* 533 U.S. at 201. If a violation could be made out, the next step is to determine whether the right was clearly established in light of the specific context of the case, not as a broad general proposition. *Id.* Under the doctrine of qualified immunity, an official will not be found personally liable for money damages unless the official's actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818. The "clearly established" rights allegedly violated by the official cannot be considered at an abstract level, but must be approached at a level of specificity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 639 (1987). "Reasonableness" is a question of law to be decided by the trial court. *Jeffers v. Heavrin*, 10 F.3d 380 (6th Cir. 1993).

Where a plaintiff complains of excessive force "in the course of an arrest,

investigatory stop, or other 'seizure' of a free citizen," the claim must be analyzed under the Fourth Amendment's objective reasonableness standard, not under a substantive due process standard." *Walton v. City of Southfield*, 995 F.2d 1311, 1342 (6th Cir. 1993) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). A Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement, nor even whenever there is a governmental caused and governmentally desired termination of an individual's freedom of movement, but only when there is a governmental termination of movement through means "intentionally" applied. *Rodriguez v. Passinault*, 637 F.3d 675, 680 (6th Cir. 2011) (quoting *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596-97 (1989)). To show an individual's movement was "intentionally" applied, "the detention or taking itself must be willful. This is implicit in the word 'seizure,' which can hardly be applied to an unknowing act." *Brower*, 489 U.S. at 596. In this case, the question of intent is whether a reasonable person would believe D'Onofrio manifested an intent to stop Woodward with the patrol car while Woodward was on his bike fleeing from the officers. *Crosby v. Abbot,* 2013 WL 4507903 at *4 (E.D. Mich. Aug. 23, 2013).

    D'Onofrio asserts he was traveling alongside Woodward yelling at Woodward to stop. D'Onofrio claims Woodward ignored D'Onofrio and instead increased his

speed which D'Onofrio interpreted as non-compliance to his order to stop. D'Onofrio asserts that he turned into the driveway, where the collision occurred between the patrol car and Woodward's bicycle. D'Onofrio claims he was attempting a roadblock, but not to seize Woodward when Woodward's bicycle hit the patrol car. D'Onofrio testified at his deposition that it was Woodward who suddenly turned his bike from the sidewalk path and that Woodward either lost control of his bike or was trying to cut across in front of D'Onofrio's vehicle. (D'Onofrio Dep. at 40-41, Pg ID 328-29) D'Onofrio claims he did not accelerate or attempt to pass Woodward and that after he realized Woodward was under the vehicle, he pulled forward and/or backward to dislodge the bicycle. (*Id.* at 48, Pg ID 333) The video submitted by D'Onofrio in his reply brief does not show the actual event of when his patrol car hit Woodward, but rather a view from another patrol car showing the bicycle under D'Onofrio's car.

Woodward responds that it was the patrol car who struck him, specifically the front bumper of the black charger and that he never saw the patrol car before it made contact with Woodward. (Woodward Dep. at 65, Pg ID 510) Woodward landed underneath the car between the front wheel and the bumper of the vehicle. (*Id.* at 66, Pg ID 511)

Viewing the facts in light of the non-moving party, Woodward, a reasonable person could believe that D'Onofrio manifested an intent to stop Woodward with his

8

patrol car since D'Onofrio ordered Woodward to "stop" and he turned his patrol car onto the parking lot to attempt to block Woodward from moving forward on his bike. There remains a question of fact as to whether Woodward ran into D'Onofrio or that D'Onofrio intentionally ran into Woodward. Determinations of intent are ordinarily a matter for the jury. *See, Crosby,* 2013 WL 4507903 at * 5; *Walker v. Davis,* 649 F.3d 502, 503 (6th Cir. 2011). .

As to whether striking the bicycle is a clearly established right, the Sixth Circuit has held that the act of intentionally striking a motorcycle with a police cruiser may amount to force. *Walker,* 649 F.3d at 503-04. The Court finds that in this instance, striking a bicycle with a patrol car in order to stop or seize a person is a violation of a clearly established right to be free from excessive force. Regarding whether D'Onofrio's actions were reasonable, the Court finds that a patrol car intentionally hitting a bicycle in order to stop or seize a person is an unreasonable use of force, with the potential of being deadly force. *Id.* Whether D'Onofrio intended to strike Woodward's bicycle is a question of fact for the trier of fact.

Based on the above, the Court finds there remains a genuine issue of material fact wehther D'Onofrio is entitled to qualified immunity as to Woodward's Fourth Amendment claim to be free from excessive force. D'Onofrio's Motion for Summary Judgment based on qualified immunity is denied.

## III.   CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant's Motion for Summary Judgment based on qualified immunity **(Doc. No. 21)** is DENIED.

IT IS FURTHER ORDERED that the following dates govern this matter:

    Final Pretrial Conference is set for:    Dec. 14, 2015, 2:30 p.m.
      (All parties with authority to settle must appear)
    Proposed Joint Final Pretrial Order
      must be submitted by:    Dec. 7, 2015
      (See E.D. Mich. LR 16.2)

    Jury Trial is set for:    Jan. 19, 2016, 9:00 a.m.


    S/Denise Page Hood
    Denise Page Hood
    United States District Judge

Dated:  October 28, 2015


I hereby certify that a copy of the foregoing document was served upon counsel of record on October 28, 2015, by electronic and/or ordinary mail.


    S/LaShawn Saulsberry
    Case Manager